IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DONALD DUVALL                                                                                  PLAINTIFF

V.                              No. 4:22-CV-00271-LPR-ERE

KILOLO KIJAKAZI, Acting
Commissioner of Social Security                                                   DEFENDANT

## RECOMMENDED DISPOSITION

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file objections if you disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and include the factual or legal basis for the objection.

Objections must be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record.

I.      Background

On January 3, 2019, Mr. Donald Duvall protectively filed an application for benefits due to depression, back pain, and pain in the leg, knee, ankle, and hip. *Tr. 8, 220.*

Mr. Duvall's claim was denied initially and upon reconsideration. At Mr. Duvall's request, an Administrative Law Judge ("ALJ") held a telephonic hearing

1

on April 23, 2021, where Mr. Duvall appeared with his lawyer, and the ALJ heard testimony from Mr. Duvall and a vocational expert ("VE"). *Tr. 42-76*. The ALJ issued a decision on July 27, 2021, finding that Mr. Duvall was not disabled. *Tr. 5-23*. The Appeals Council denied Mr. Duvall's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-4*.

Mr. Duvall, who was forty-two years old at the time of the hearing, graduated high school and has past relevant work experience as a construction worker and breading machine tender. *Tr. 49-50, 72*.

## II.   The ALJ's Decision[1]

The ALJ found that Mr. Duvall had not engaged in substantial gainful activity since January 3, 2019, the amended alleged onset date. *Tr. 8, 10*. He concluded that Mr. Duvall had the following severe impairments: morbid obesity, lumbago, osteoarthritis, and hypertension. *Tr. 10*. However, the ALJ concluded that Mr. Duvall did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 13*.

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g).

According to the ALJ, Mr. Duvall had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: (1) occasional balancing and stooping; (2) no climbing, kneeling, crouching, or crawling; and (3) avoiding even moderate exposure to hazards, including not operating a motor vehicle for work. *Tr. 14*.

In response to hypothetical questions incorporating the above limitations, the VE testified that potential jobs were available in the national economy, including document preparer, cutter and paster, and nut sorter. *Tr. 18, 72-73*. Accordingly, the ALJ determined that Mr. Duvall was not disabled.

## III. Discussion

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983

(8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

## B. Mr. Duvall's Arguments for Reversal

Mr. Duvall contends that the Commissioner's decision is not supported by substantial evidence, because the ALJ erred by: (1) failing to develop the record fully and fairly; (2) failing to properly assess his credibility; and (3) finding an RFC exceeding his ability. *Doc. 9 at 2*. After carefully reviewing the record as a whole, the undersigned recommends affirming the Commissioner.

## C. Analysis

### 1. Developing the Record Further Was Not Necessary

Mr. Duvall argues that the ALJ failed to develop the record because he "rejected the only examining source evidence related to physical impairments," a consultative examination report by Dr. Clifford Evans. *Doc. 9 at 8*. The April 12, 2019 report noted "severe limitations re: body as a whole due to pain in both lower extremities [caused by a] lifetime of morbid obesity and joint overload!" *Tr. 331*.

The ALJ acknowledged Dr. Evans' opinion but found that it "does not include a vocationally specific set of limitations or abilities and it does not include a detailed rationale for the findings" and fails to "include references to actual medical examinations or medical records to support th[e] brief assessment." *Tr. 16*.

4

The ALJ reiterated that "numerous in-office examinations describe mostly normal physical abilities" and x-rays of the lumbar spine showed no "significant abnormalities." *Id.* These findings are supported by the medical records. *Tr. 340-344, 387-420.* For example, Mr. Duvall's visits involved fasting labs, bronchitis, a respiratory infection, and blood pressure checks. *Tr. 340, 387, 392, 397, 419, 455.*

"While an ALJ should recontact a treating or consulting physician if a critical issue is undeveloped, the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (internal citations and quotations omitted). Mr. Duvall "has the burden to offer the evidence necessary to make a valid decision about [his] claim." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). He "bears a heavy burden in showing the record has been inadequately developed. He must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007). "[A]n ALJ does have a duty to develop the record, [but] this duty is not never-ending . . . ." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

Mr. Duvall faults the ALJ for relying on state agency opinions that "did not have the benefits of any 2020 or 2021 [medical evidence] when setting out their RFC assessments." *Doc. 9 at 12.* However, the ALJ, when discussing the state

5

agency opinions, noted that they were "consistent with the results of numerous in-office visits that consistently describe mostly normal physical abilities, without an on-going description of debilitating extremity pain, difficulty walking, or the inability to sit for more than thirty (30) minutes." *Tr. 16*. Finally, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Minney v. Berryhill*, No. C16-175, 2018 WL 659860, at *8 (N.D. Iowa Feb. 1, 2018) (quoting *Chandler v. Commissioner of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)).

Substantial evidence, including the medical evidence, supports the ALJ's RFC finding. The ALJ was not required to develop the record further.

### 2. The ALJ's Credibility Analysis Was Adequate

Mr. Duvall asserts that the ALJ did not comply with the *Polaski* factors and, instead, based his credibility finding on that fact that Mr. Duvall's "subjective complaints were not supported by his medical records and other evidence." *Doc. 9 at 14-15*.

The Court normally should defer to an ALJ's credibility determination. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). An ALJ's brevity is not reversible error so long as the ALJ's reasoning allows for "appropriate judicial

review." *Id.* When evaluating the credibility of a claimant's subjective complaints, an ALJ must consider the *Polaski* factors, which include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). Also relevant is the absence of objective medical evidence supporting the claimant's subjective complaints, although the ALJ cannot discount a claimant's credibility based on this consideration alone. *Id*. at 932. The ALJ need not explicitly discuss each of the *Polaski* factors in the written decision as long as it is clear that they were considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

Here, the ALJ considered Mr. Duvall's activities of daily living, as well as the medical evidence, and weighed them against his subjective complaints. The ALJ noted that "[t]he results of a series of in-office physical examinations performed by his treating pain specialists consistently describe mostly normal physical abilities." *Tr. 16.* Treating physicians repeatedly described Mr. Duvall as "healthy appearing, comfortable, [and in] no acute distress." *Tr. 498, 515.* Also contradicting Mr. Duvall's claim of limited activities of daily living is the fact that

7

he was still able to hunt in October 2019. *Tr. 402, 471*.[2] Notably, this was after Dr. Evans' opinion that Mr. Duvall asserts is persuasive.

Additionally, the ALJ properly noted that Mr. Duvall "did not maintain consistent attendance to a prescribed physical therapy program, further reducing the consistency of his hearing testimony." *Tr. 16*. Mr. Duvall claims that "there were no inconsistencies in the hearing testimony sufficient to allow/support the ALJ's credibility [finding] . . . . The actual testimony was 'I haven't been a lot. I've skipped a lot, you know. I mean, a lot of days, I just – I'm hurting too bad, and I don't feel like going regular.'" *Doc. 9 at 15*. However, as the ALJ pointed out, the medical records reveal that Mr. Duvall did not attend at least one physical therapy appointment because he forgot, not because he was in too much pain to go. *Tr. at 507-508*. Furthermore, it was entirely appropriate for the ALJ to consider the fact that Mr. Duvall missed appointments. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the claimant "cancelled several physical therapy appointments and that no physician had imposed any work-related restrictions on her."). As of March 18, 2021, Mr. Duvall had been to only one physical therapy session, despite receiving the prescription months earlier, on December 4, 2020. *Tr. at 498, 517*. Notably, the treating physician told Mr. Duvall that "most of his pain seems primarily due to excess

---

[2] Mr. Duvall reported that his foot pain increased "after hunting."

weight," yet Mr. Duvall has not followed the prescribed treatment plan. *Tr. 510.* See *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility).

Based on the evidence as a whole, the ALJ's findings were supported by the record and there is no reason to depart from the deference normally given to the ALJ's credibility determination.

### 3. The RFC Finding is Supported by the Record as a Whole

Mr. Duvall contends that the ALJ erred in his RFC finding, because he "relied on residual functional assessments completed by non-treating medical consultants that [were] 18 months and 24 months old, respectively, indicating plaintiff's ability to perform within the sedentary exertional level." *Doc. 9 at 17.* Yet, Mr. Duvall does not expound on how this constitutes error. Again, when discussing the state agency opinions, the ALJ found that they were "consistent with the results of numerous in-office visits that consistently describe mostly normal physical abilities, without an on-going description of debilitating extremity pain, difficulty walking, or the inability to sit for more than thirty (30) minutes." *Tr. 16*.

Mr. Duvall bears the burden of proving his RFC, which represents the most he can do despite the combined effects of his credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical

records, observations of treating physicians and others, and [the] claimant's own descriptions of his limitations." *Id*. "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Mr. Duvall argues that the ALJ did not consider the fatigue related to his obesity. *Doc. 9 at 18*. To the contrary, the ALJ limited Mr. Duvall to sedentary work and restricted him from exposure to hazards and driving a car for work. *Tr. 14*. Moreover, Mr. Duvall's medical records indicated that he was often cooperative, pleasant, alert, awake, and oriented. *Tr. 458, 498-499, 508-509, 515-516*. While Mr. Duvall certainly may suffer from fatigue, the medical records support the ALJ's finding that it would not cause an issue with his ability to perform sedentary work.

Mr. Duvall complains that "the ALJ started the hearing nearly thirty minutes late . . . [s]o there was not a luxury of time to fully develop the ADLs and Typical Day testimony which would have included fatigue and the need for daytime naps." *Doc. 9 at 18*. This argument is meritless. At the end of the 48-minute hearing, the ALJ asked both Mr. Duvall and his lawyer if they had anything else they wanted to discuss. Both responded in the negative. *Tr. 76*.

Mr. Duvall also points out that the ALJ's RFC finding in his written opinion "is not identical to the hypothetical presented to the vocational expert during the

hearing testimony." *Doc. 9 at 20.* It is true that the ALJ's hypothetical to the VE included a limitation of "frequent, but not constant, reaching bilaterally," which was not included in the written opinion's RFC finding. *Tr. 72.* Assuming this is error, it is harmless. Additionally, Mr. Duvall fails to provide any argument or evidence about how the absence of the more restrictive elements would eliminate the jobs the VE and ALJ found he was capable of performing.

Finally, Mr. Duvall argues that the ALJ failed to include any mental limitations in his RFC finding. However, the ALJ found that Mr. Duvall's medically determinable mental impairments cause only "minimal limitation." *Tr. 11. Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 (8th Cir.2004) (finding that an ALJ is required to include non-severe impairments in the RFC only when there is evidence of limitations caused by the non-severe impairments.).

The RFC finding reflected those limitations which the ALJ found to be credible, and it is supported by the medical evidence as a whole.

**IV. Conclusion**

The ALJ applied proper legal standards in evaluating Mr. Duvall's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated this 14th day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE